IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ JUL 3 1 2009 ★

BROOKLYN OFFICE

Charles A. Patrizia (CP-2791)
Christopher F. Dugan
Erin E. Klisch
Paul, Hastings, Janofsky & Walker LLP
875 Fifteenth Street, N.W.
Washington, DC 20005
(202) 551-1700

James E. Berger (JB-6605)
Charlene Sun (CS-1281)
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, NY 10022
(212) 318-6000

Attorneys for Petitioner Textron Inc.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**09 3330**

AMON, J.

MANN. M.J.

| |
|---|
| **Textron Inc.,** |
|                            **Petitioner,** |
|         - against - |
| **ArcelorMittal Brasil S.A.,** |
|                             **Respondent.** |

**Notice of Petition to Confirm Arbitral
Award**

PLEASE TAKE NOTICE that upon the filing of the Petition herein, the

Declaration of James E. Berger and exhibits thereto, and the Memorandum of Law in support

thereof, Petitioner Textron Inc. ("Textron") will petition this Court, pursuant to Chapters 1 and 2

of the Federal Arbitration Act, 9 U.S.C. §§ 1 & 201 *et seq.*, the Rhode Island Arbitration Statute,

and the various agreements between the parties hereto, (a) for an order confirming a partial

Arbitral Award (the "Partial Award") issued on July 3, 2009 by a tribunal, convened under the

auspices of the International Court of Arbitration of the International Chamber of Commerce, in

Textron's favor and against Respondent ArcelorMittal Brasil S.A. ("Arcelor Brasil"), (b) for the entry of judgment on the Partial Award (i) declaring that Arcelor Brasil is and remains obligated to Textron for various indemnification obligations set forth in an agreement between the parties, (ii) requiring Arcelor Brasil to post adequate security to guarantee its continued performance of its indemnification obligations as set forth in the Partial Award, and (c) granting such other and further relief as the court deems just and proper.

Dated:  New York, New York     By:
        July 31, 2009

Charles A. Patrizia (CP-2791)
Christopher F. Dugan
Erin E. Klisch
Paul, Hastings, Janofsky & Walker LLP
875 Fifteenth Street, N.W.
Washington, DC  20005
(202) 551-1700

James E. Berger (JB-6605)
Charlene Sun (CS-1281)
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, NY 10022
(212) 318-6000

Counsel for Petitioner
Textron Inc.

Charles A. Patrizia (CP-2791)
Christopher F. Dugan
Erin E. Klisch
Paul, Hastings, Janofsky & Walker LLP
875 Fifteenth Street, N.W.
Washington, DC  20005
(202) 551-1700

James E. Berger (JB-6605)
Charlene Sun (CS-1281)
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, NY 10022
(212) 318-6000

Attorneys for Petitioner Textron Inc.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

Textron Inc.,

                    Petitioner,

          - against -

Arcelor Mittal Brasil S.A.,

                    Respondent.

**Petition to Confirm Arbitral Award**

---

Petitioner Textron Inc. ("Textron"), by and through its undersigned counsel, alleges as follows:

1.      Textron brings this summary proceeding under the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") and Chapter 2 of the Federal Arbitration Act ("FAA"), Chapter 1 of the FAA, and Rhode Island law to confirm a duly-rendered partial arbitration award (the "Partial Award") issued in its favor and against Respondent Arcelor Mittal Brasil S.A. ("Arcelor Brasil").

2.      Textron is a corporation organized under the laws of Delaware, with its principal place of business at 40 Westminster Street, Providence, Rhode Island.

3.      Upon information and belief, Respondent Arcelor Brasil is a Brasilian corporation with its principal place of business at Avenida Carandai, 1115, 26° Andar, 30130-915 Belo Horizonte, MG, Brasil.  Arcelor Brasil became the successor to Companhia Siderurgica Belgo-Minera ("Belgo") in 2006, when Arcelor Brasil acquired its 100% interest in Belgo.

4.      As described further below, Textron and Belgo entered into a written agreement on December 1, 1997, in which the parties agreed, *inter alia*, to arbitrate all disputes arising thereunder.

5.      This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332(a)(2), 28 U.S.C. § 1331, and 9 U.S.C. § 203.

6.      This Court should find that it may exercise personal jurisdiction over Arcelor Brasil for purposes of confirming the Partial Award without regard for Arcelor Brasil's contacts with New York or the United States.  Because this proceeding to confirm the Partial Award is a secondary proceeding expressly contemplated by the parties in their agreement, and because this proceeding is intended for the sole purpose of confirming and enforcing an arbitral agreement and award pursuant to which the parties have already had their dispute adjudicated, and because Brazil is a signatory and member of the New York Convention, this proceeding does not implicate any independent due process concerns, and this Court's exercise of personal jurisdiction over Respondent Arcelor Brasil should not be restricted by the same notions of due process as arise in connection with original, plenary proceedings.

7.      Venue is proper in this judicial district pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(d).

**Facts**

A.      **Jurisdiction**

8.      While, as alleged above, the nature of this proceeding permits the Court to exercise personal jurisdiction over Arcelor Brasil regardless of Arcelor Brasil's jurisdictional connections to this forum, Arcelor Brasil nonetheless conducts business in New York in such a systematic and continuous fashion as to have specific jurisdiction contacts with this forum as to satisfy the due process requirements imposed by the U.S. Constitution.

9.      Upon information and belief, Arcelor Brasil is a wholly-owned subsidiary and the Brazil-based operating arm of Arcelor Mittal, a Luxembourg corporation that is the largest steel producer in the world.

10.     A website published and maintained by the U.S. Customs and Border Protection Service ("U.S. Customs") lists Arcelor Brasil as one of the 5,000 largest importers to the United States, *i.e.*, one of the 5,000 entities that sells the most goods to purchasers in the United States. That website lists, as Arcelor Brasil's address, "156 Main Street, Port Washington, New York." That address is located in this judicial district. (attached hereto as Exhibit D.) Upon information and belief, Arcelor Brasil provided this address to U.S. Customs under penalty of perjury.

11.     Arcelor Brasil's financial statements for the years 2006 through 2008, which are publicly accessible at http://www.Arcelor Brasil.com.br/english/investor_relations/report_stakeholders/annual_social_environmental/annual_social_environmental.asp, show that Arcelor Brasil has made significant sales to a New York-based related company. Specifically, for the period ending December 31, 2007, Arcelor Brasil made sales to Arcelor Brasil International America, Inc., a corporate affiliate having a place of

-3-

business in New York County ("Arcelor America"), in an amount equal to R$148,495,000.  For

the year ending December 31, 2008, Arcelor Brasil made sales of approximately US$

9,000,000.00 to Arcelor America.[1]

12.     Upon information and belief, Arcelor Brasil solicits business in New York

and sells products to purchasers in New York.

13.     Collectively, the transactions set forth above permit the exercise of

jurisdiction pursuant to Section 301 of the New York Civil Practice Law and Rules ("C.P.L.R.").

14.     In the event the Court finds that (a) its exercise of personal jurisdiction

over Arcelor Brasil must comply with due process requirements, and (b) that Arcelor Brasil's

contacts with New York are insufficient to permit the exercise of personal jurisdiction pursuant

to Section 301, personal jurisdiction may be asserted alternatively pursuant to F.R.C.P. 4(k)(2),

as Arcelor Brasil's status as one of the 5,000 largest foreign sellers of goods in the United States

necessarily evidences a systematic and continuous course of commercial conduct with the United

States as a whole to permit the exercise of jurisdiction under Rule 4(k)(2).

**B.     The Transaction**

15.     On or about December 1, 1997, Textron and Companhia Siderurgica

Belgo-Miniera ("Belgo") entered into a Purchase and Sale Agreement (the "PSA") (attached

hereto as Exhibit A) and made a part hereof as if set forth in full herein) pursuant to which

Textron purchased all the issued and outstanding shares (except one) of a subsidiary of Belgo

(Arcelor Brasil's predecessor), known as Brazaco Mapri Industrias Metalurgicas S.A. ("Mapri

Brasil").   As consideration for its purchase of Mapri Brasil, Textron (a) paid R$77,910,000.

While Textron was the purchaser of Mapri, it nonetheless loaned certain funds to Belgo in

connection with an "earnout" provision.  These funds were to be repaid, initially, using profits

---

[1] As of July 22, 2009, the Brazilian Real was worth approximately US$.525.

-4-

from Mapri's operations, although in the event that Mapri was not profitable, the PSA required them to be repaid in cash and in accordance with a promissory note (the "Earnout Note").

16.   Article 12.1 of the PSA required Belgo to indemnify Textron for certain specified losses resulting from Mapri's operations. *See* PSA, Exhibit A, Art. 12.1.

17.   Beginning in 2002, Textron sought to restructure its ownership of Mapri and the transaction evidenced by the PSA (the "2002 Restructuring"). As a result of this restructuring, to which Belgo ultimately agreed and in connection with which the parties executed a series of agreements, the principal amount of the Earnout Note was reduced by half and that note was assigned by Belgo to a related third party, Associacao de Assistencia Belgo-Miniera ("AABM"), which was and is a corporate affiliate of Belgo.

18.   AABM did not repay the restructured Earnout Note in accordance with its terms, resulting in lengthy negotiations between the parties concerning the terms and place of repayment. At the conclusion of these negotiations, in 2004, Textron provided Belgo and AABM with, among other things, a release (the "2004 Release") that was designed to ensure that upon Belgo's transfer of the outstanding indebtedness under the restructured Earnout Note to a specified bank account in Brasil, AABM and Belgo would be released from further liability under that Note.

19.   Belgo continued to perform under the PSA's indemnification provision following the 2002 Restructuring and the 2004 Release, and Belgo made indemnification payments under the PSA until approximately October 2007.

20.   In 2006, Arcelor Brasil acquired 100% ownership and complete control of Belgo. On October 24, 2007 – almost five years after the 2002 Reorganization, and almost four years after Textron's execution of the 2004 Release – Arcelor Brasil for the first time informed

LEGAL_US_E # 83430547.6

Textron that it was repudiating its indemnification obligations under Article 12.1.  Arcelor Brasil

claimed that the 2004 Release constituted a "general release" by Textron of its right to

indemnification under the PSA, rather than simply a release with respect to certain repayment

obligations arising under the restructured Earnout Note.

21.     As a result of Arcelor Brasil's repudiation, Textron has already incurred

damages estimated at US$ 1,298,727.16 and anticipates future damages estimated at

US$ 17,779,035.23.

### C.     The Arbitration

22.     In the PSA, Textron and Belgo agreed to submit any and all disputes to

binding arbitration in Paris, France before a three-member tribunal convened under the auspices

of the International Chamber of Commerce ("ICC").  Specifically, Article 14.6 of the PSA

provides in full:

> 14.6 Arbitration.
>
> (a)     Any dispute, controversy or claim arising under, out of or
> in connection with this Agreement and any subsequent
> amendments of this Agreement, including without limitation, its
> formation, validity, binding effect, interpretation, performance,
> breach or termination but specifically excepting any action for
> injunction or other court order as set forth in Section 9.3(c) or in
> Section 14.6(b), as well as non-contractual claims, shall be referred
> to and finally settled by arbitration, provided that neither party
> shall initiate arbitration without first having given the other party
> sixty (60) days (or such less period under appropriate
> circumstances) prior notice thereof so as to afford the parties the
> opportunity amicably to resolve their differences.  The arbitration
> will take place in Paris, France within two weeks after the end of
> the period set forth in the preceding sentence and the language of
> the arbitration shall be English.  Subject to the terms of this
> agreement, the arbitration shall be conducted under the Rules of
> the International Chamber of Commerce by three arbitrators.  Each
> party shall appoint one arbitrator, and the third arbitrator, who shall

act as chairman of the arbitration tribunal shall be appointed by the other two arbitrators. If any party fails to appoint its respective arbitrator within ten days after the commencement of the arbitration, the arbitrator or arbitrators shall be selected by the Paris office of the International Chamber of Commerce in accordance with its rules. The arbitrator(s) award resulting from any such arbitration may be confirmed and entered as final judgment in any court of competent jurisdiction and enforced accordingly. The costs of the arbitration (including the arbitration tribunal fees and the legal fees of the parties) shall be paid by the loser, provided that where the award is a compromise of the parties' positions, the arbitral tribunal shall allocate the costs as it deems appropriate.

PSA, art. 14.6, at 51.

23.     Textron provided Arcelor Brasil with the required 60-day notice on December 5, 2007, and the parties corresponded and met in São Paulo in January 2008 in an attempt to resolve the dispute amicably; however, no settlement was reached.

24.     On February 18, 2008, Textron commenced arbitration proceedings requesting an award:

> a.     declaring that Arcelor [Brasil] has breached its indemnification obligations under the PSA;
>
> b.     awarding Textron the actual losses it has incurred and will incur by reason of Arcelor [Brasil]'s breach before the issuance of the award, such amount to be calculated during this proceeding, plus pre-award and post-award interest;
>
> c.     ordering that Arcelor [Brasil] indemnify Textron for all future losses of any type whatsoever pursuant to Article XII of the PSA;
>
> d.     awarding Textron its attorneys' fees for its counsel in the United States, Brazil, and France;
>
> e.     requiring Arcelor [Brasil] to bear the costs and expenses of the Arbitration, including all the fees and any expenses of this Tribunal; and
>
> f.     ordering any further or other relief the Tribunal may deem just and proper.

25.     In accordance with the PSA, Textron and Arcelor Brasil each nominated an arbitrator; no objections to either party's nominations were made, and on June 23, 2008, the two party-nominated arbitrators appointed the third arbitrator, who served as chair of the arbitral tribunal (the "Tribunal"). The Tribunal was thus duly constituted in accordance with the PSA and the ICC arbitration rules.

26.     On September 11, 2008, the Tribunal issued Procedural Order No. 1 (Exhibit B), in which it bifurcated the proceedings into two stages. In the first stage, the Tribunal held it would consider the issues of jurisdiction and liability, while in the second stage, it would consider the issue of damages.

27.     Both Textron and Arcelor Brasil submitted extensive evidentiary material and memorials. The first arbitration hearing commenced on April 20, 2008. During these proceedings, both Textron and Arcelor Brasil proffered testimony in support of their contentions. Each party was represented by outside and in-house counsel at the hearing, and each party participated fully.

28.     On July 3, 2009, the Arbitral Tribunal issued a Partial Award (Exhibit C). In the Partial Award, the Tribunal:

(1)     ruled that it has jurisdiction to decide the present dispute;

(2)     ruled that Arcelor [Brasil] remains liable for the indemnification obligations that Belgo agreed to in the 1997 PSA, [and that those obligations were not released by the 2004 Release];

(3)     dismissed the counterclaims, at the exception of the counterclaims under n°s 35, 36 and 37 above [regarding Respondent's reservation of the right to contest the amount of the indemnification obligations under the PSA], which are reserved;

(4)     decided that the amount of Textron's damages will be determined in the second phase of this arbitration

and that the agenda will be established by the
Arbitral Tribunal, after consultation with the
parties, after the notification of this partial award;

(5)     reserved its decision on the costs of the arbitration;

(6)     reserved all other decisions for a future award.

29.     Despite the Tribunal's decision that Arcelor Brasil remains liable for its

indemnification obligations pursuant to the PSA, and the Tribunal's dismissal of Arcelor Brasil's

counterclaims against Textron, Arcelor Brasil has made no payment to Textron for the damages

it incurred as a result of Arcelor Brasil's breach of its indemnification obligations.\

30.     Based on communications with Arcelor Brasil's counsel, it is apparent to

Textron, for the time being, that Arcelor Brasil has no intention of carrying out the Partial

Award.

### First Cause of Action

### (Confirmation of Arbitration Award Pursuant to New York Convention and 9 U.S.C. § 201 *et. seq.*)

31.     Petitioner repeats and realleges the allegations in paragraphs 1 through 28

as if set forth fully herein.

32.     The PSA is an "agreement in writing" within the meaning of Article II(2)

of the New York Convention.

33.     The Partial Award was made in France, a nation that is a signatory to the

New York Convention and that is a state other than the state where recognition and enforcement

is sought hereby.

34.     The Partial Award finally and fully adjudicates the question of whether

Arcelor Brasil remains obligated to provide indemnification to Textron pursuant to Article 12.1

of the PSA, by ruling that Textron did not release its right to such indemnification and that

-9-

Arcelor Brasil continues to be bound by it.

35.     Brasil and the United States are each signatories to the New York Convention.

36.     The requirements for application of the Inter-American Convention on International Commercial Arbitration of 1975, codified at 9 U.S.C. § 301 *et seq.* ("Panama Convention"), are not met, as the arbitration was venued, and the Partial Award was made, in France, a nation that is not a signatory to the Panama Convention or a member of the Organization of American States.

37.     None of the grounds for refusal or nonrecognition of the Partial Award set forth in the New York Convention apply.

38.     The Partial Award is required to be confirmed pursuant to the New York Convention and 9 U.S.C. § 207.

## Second Cause of Action

### (Confirmation of Arbitration Award Pursuant to 9 U.S.C. § 1, *et. seq.*)

39.     Petitioner repeats and realleges the allegations in paragraphs 1 through 28 as if set forth fully herein.

40.     In the alternative, if the Partial Award may not be confirmed under the New York Convention and Chapter 2 of the FAA, the Partial Award may be confirmed under Chapter 1 of the FAA.

41.     The PSA is an agreement evidencing a transaction in "commerce among the several States or with foreign nations" within the meaning of 9 U.S.C. § 1.

42.     Article 14.6 of the PSA is "a written provision . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the

-10-

whole or any part thereof," within the meaning of 9 U.S.C. § 2.

43.     The parties agreed in Article 14.6 of the PSA that "a judgment of the court shall be entered upon the award made pursuant to the arbitration" within the meaning of 9 U.S.C. § 9.

44.     None of the grounds for vacatur, modification or correction enumerated in 9 U.S.C. §§ 10 or 11 apply.

45.     The Partial Award is required to be confirmed pursuant to 9 U.S.C. § 9.

### Third Cause of Action

### (Confirmation of Arbitration Award Under Rhode Island Arbitration Statute)

46.     Petitioner repeats and realleges the allegations in paragraphs 1 through 28 as if set forth fully herein.

47.     In the alternative, if the Partial Award may not be confirmed under Chapters 1 or 2 of the FAA, the Award may be confirmed under the Rhode Island Arbitration Act, R.I.G.L. § 10-3-1, *et seq.*

48.     The PSA is a clearly written and expressed "provision in a written contract to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof" within the meaning of R.I.G.L. § 10-3-2.

49.     The Partial Award is in writing and signed by a majority of the arbitrators, as required by R.I.G.L. § 10-3-10.

50.     None of the grounds for vacatur, modification or correction enumerated in R.I.G.L. § 10-3-12 or § 10-3-14 apply.

51.     The Partial Award is required to be confirmed pursuant to the Rhode Island Arbitration Statute, R.I.G.L. § 10-3-11.

-11-

## Fourth Cause of Action

### (Breach of Contract)

52.     In the alternative, if the Partial Award may not be confirmed under Chapters 1 or 2 of the FAA, or the Rhode Island Arbitration Act, Petitioner seeks contract damages resulting from Arcelor Brasil's breach of the arbitration agreement through its refusal to abide by the ICC Rules.

53.     Article 14.6 of the PSA is a valid arbitration agreement pursuant to which the parties agreed to submit any dispute, controversy or claim arising under, out of or in connection with the PSA to binding arbitration governed by the ICC Rules, and to confirm any resulting award in any court of competent jurisdiction.

54.     Article 28(6) of the ICC Rules states that "[e]very Award shall be binding on the parties.  By submitting the dispute to arbitration under these Rules, the parties undertake to carry out any Award without delay and shall be deemed to have waived their right to any form of recourse insofar as such waiver can validly be made."

55.     By agreeing to apply the ICC Rules and submitting to arbitration thereunder, Arcelor Brasil agreed to "undertake to carry out any Award without delay . . ."  See ICC Rules of Arbitration, art. 28(6).

56.     Textron abided by the arbitration agreement by submitting its indemnification claims to an ICC Tribunal pursuant to the agreement and arbitrating the dispute in accordance with the ICC Rules.  Arcelor Brasil participated in the arbitration in full.

57.     Pursuant to Article 28(6) of the ICC Rules, Textron now seeks to confirm the Partial Award in this Court.

58.     None of the grounds for non-recognition set forth in Chapter 2 of the FAA

are present.  Accordingly, the Partial Award is a valid arbitral award that would be entitled to prompt confirmation were Chapter 2 of the FAA to apply herein.  Arcelor Brasil is thus affirmatively mandated by the arbitration agreement to "undertake to carry out [the Partial Award] without delay," and its refusal to do so constitutes a breach of the PSA.

59.      Such breach has directly resulted in damages consisting of past indemnification amounts to be quantified at trial and attorney's fees and costs incurred as a result of the arbitration, plus any costs of enforcement of the Partial Award.

WHEREFORE, Petitioner prays:

(a)      that the Court enter an order confirming the Partial Award against Arcelor Brasil;

(b)      that, on the basis of the confirmed Partial Award, the Court enter judgment upon the Partial Award:

   i.      declaring that Arcelor Brasil is and remains obligated to Textron for its indemnification obligations set forth in the PSA;

   ii.     declaring that Textron is entitled to all its costs and attorneys fees in connection with the arbitration and this proceeding, in an amount to be determined at the conclusion of the arbitration and this proceeding; and

   iii.    requiring Arcelor Brasil to post adequate security, in the form of a bond, letter of credit, or other instrument capable of securing Arcelor Brasil's future indemnification obligations under the PSA, to ensure its continued performance of those obligations;

(c)      that, given that Arcelor Brasil has unmatured obligations under the PSA, the Court hereby maintain jurisdiction to ensure compliance with those obligations and to enter judgment awarding Textron its past damages as to be determined by the Tribunal; and

(d)      that the Court render such other and further relief as may be proper.

-13-

Dated:  New York, New York        By: _____
        July 31, 2009

                                      Charles A. Patrizia (CP-2791)
                                      Christopher F. Dugan
                                      Erin E. Klisch
                                      Paul, Hastings, Janofsky & Walker LLP
                                      875 Fifteenth Street, N.W.
                                      Washington, DC  20005
                                      (202) 551-1700

                                      James E. Berger (JB-6605)
                                      Charlene Sun (CS-1281)
                                      Paul, Hastings, Janofsky & Walker LLP
                                      75 East 55th Street
                                      New York, NY 10022
                                      (212) 318-6000

                                      Counsel for Petitioner
                                      Textron Inc.

LEGAL_US_E # 83430547.6